# SUPREME COURT OF THE UNITED STATES

### FLORIDA *v.* CALIFORNIA AND WASHINGTON

ON MOTION FOR LEAVE TO FILE A BILL OF COMPLAINT

No. 162, Orig.   Decided May 26, 2026

The motion for leave to file a bill of complaint is denied.

JUSTICE THOMAS, with whom JUSTICE ALITO joins, dissenting from the denial of motion for leave to file complaint.

The State of Florida moved for leave to file a complaint against Washington and California for defying federal law by providing commercial driver's licenses to illegal aliens who cannot read English. The result of this practice, Florida alleges, is the disturbing phenomenon of illegal-alien truck drivers causing fatal accidents on the road. I respectfully dissent from the Court's denial of Florida's motion because we cannot refuse to hear suits between States.

I

On August 12, 2025, Harjinder Singh crashed a tractor-trailer into a minivan on the Florida Turnpike. While driving on the highway, Singh approached a sign clearly prohibiting U-turns and marking the turnaround area for "official use only." Singh inexplicably attempted a U-turn across the median anyway. Singh's U-turn swung his trailer across both lanes of the highway, where it could not be avoided by a minivan traveling behind him. All three passengers in the minivan died. Singh was arrested for vehicular homicide.

Law enforcement soon discovered that Singh, an Indian who had crossed the Mexican border illegally, likely could not read the road signs. After the crash, the Federal Motor Carrier Safety Administration tested Singh's English proficiency: It found that Singh could not correctly answer most

of its verbal questions and that he could identify only one out of four highway signs.

An illegal alien who cannot read English road signs cannot drive an 80,000-pound tractor-trailer. Federal law and regulations prohibit States from providing commercial driver's licenses to applicants unless they pass a driver's test, sufficiently understand the English language, and show appropriate immigration status. See 49 U. S. C. §§31308, 31311; 49 CFR §§383.71, 383.73, 383.111, 391.11 (2024); see also 90 Fed. Reg. 46523 (2025) (to be codified in 49 CFR §383.71); 91 Fed. Reg. 7102 (2026) (to be codified in 49 CFR §383.73). Although Singh failed his test at least ten times in Washington and at least one time in California, both Washington and California provided Singh with CDLs.*

Crashes like Singh's are disturbingly common. See Press Release, Dept. of Transportation, Trump's Transportation Secretary Sean P. Duffy Puts Safety First, Finalizes Rule To Stop Unqualified Foreign Drivers From Driving Big Rigs on American Roadways (Feb. 11, 2026) (collecting examples). The Department of Transportation seems to partly attribute this trend to "systemic non-compliance" with federal CDL standards in several States, including California. *Ibid.*

―――――――――

*Washington eventually admitted that it had erred when it licensed Singh. See A. Lockie, Washington Admits Mistake in Issuing Harjinder Singh and 685 Other Non-Citizens Full-Term CDLs, Overdrive, Oct. 1, 2025; Failed CDL Test 10 Times: New Details on Indian-Origin Harjinder Singh Who Took Wrong U-Turn in Florida, Killed 3, The Times of India, Oct. 25, 2025. California, for its part, issued Singh a nondomiciled CDL, a short-term license for immigrants who lack lawful-permanent-resident status. Under federal rules as they existed at the time, Singh had to show a valid work authorization. See 49 CFR §383.71(a)(5), (b)(9), (f)(2)(i) (2024). California now explains that, although Singh failed his initial driver's test, it issued the nondomiciled CDL only after he eventually passed.

After Singh's crash, Florida sought permission from this Court to file a lawsuit against Washington and California based on how those States provide CDLs to foreign drivers. Florida claims that Washington and California laws are preempted by federal law to the extent that they prohibit licensing officials from asking applicants about immigration status. Florida also claims that both States' disregard of federal commercial licensing standards constituted an actionable public nuisance. According to Florida, enforcement data suggest that neither State is adequately checking CDL holders for English proficiency.

Without explanation, the Court today denies Florida leave to file its suit and proceed to the motion-to-dismiss stage.

## II

This Court has exclusive original jurisdiction over Florida's suit because it involves one State suing other States. Article III establishes that "[i]n all Cases . . . in which a State shall be [a] Party, the supreme Court shall have original Jurisdiction." §2, cl. 2. Congress has made our original jurisdiction "exclusive" in "all controversies between two or more States," meaning that no other court can hear this case. 28 U. S. C. §1251(a).

I doubt this Court has discretion to refuse to hear cases within its exclusive original jurisdiction. "We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Cohens* v. *Virginia*, 6 Wheat. 264, 404 (1821) (Marshall, C. J., for the Court). "If this Court does not exercise jurisdiction over a controversy between two States, then the complaining State has no judicial forum in which to seek relief." *Nebraska* v. *Colorado*, 577 U. S. 1211, 1212 (2016) (THOMAS, J., dissenting from denial of motion for leave to file complaint). The only statute addressing this Court's jurisdiction over these kinds of cases nowhere contemplates a process of discretionary

review. See §1251(a). Nonetheless, this Court has adopted a discretionary approach to its exclusive original jurisdiction based on "policy judgments that are in conflict with the policy choices that Congress made in the statutory text specifying the Court's original jurisdiction." *Id.*, at 1213. Thus, both JUSTICE ALITO and I have repeatedly called for revisiting the Court's precedents in this area. See, *e.g.*, *Texas* v. *California*, 593 U. S. \_\_\_ (2021) (ALITO, J., dissenting from denial of motion for leave to file complaint); *Alabama* v. *California*, 604 U. S. \_\_\_ (2025) (THOMAS, J., dissenting from denial of motion for leave to file complaint).

Even under the Court's discretionary approach, it likely should have granted Florida leave to file its complaint. The Court considers two factors: "the nature of the interest of the complaining State, focusing on the seriousness and dignity of the claim" and "the availability of an alternative forum in which the issue tendered can be resolved." *Mississippi* v. *Louisiana*, 506 U. S. 73, 77 (1992) (internal quotation marks and citation omitted). As to the first factor, this Court has described as a "model case" a dispute that "would amount to *casus belli* if the States were fully sovereign." *Ibid.* (internal quotation marks omitted). In other words, the Court asks whether the dispute would be a matter of diplomatic concern in the international arena. This case appears to meet that standard. A dispute over one nation sending dangerous people into another "would be the source of considerable international tension." *Texas*, 593 U. S., at \_\_\_ (opinion of ALITO, J.) (slip op., at 9). If Florida were an independent nation, it "might resolve [this] dispute by diplomacy, by submitting it to international arbitration, or by self-help measures." *Ibid.* By entering the Union, States agree to instead have such disputes resolved by this Court. As to the second factor, all appear to agree that Florida cannot sue Washington and California in any other forum. Even the Federal Government's enforcement authority over these matters contemplates judicial review

only in limited circumstances, so it may not result in the declaration of legal obligations that Florida seeks. See 49 CFR §§384.307(e), 384.405(g).

### III

This Court declines to even hear Florida's claims, even though it has nowhere else to bring them. Because I would allow Florida to file its complaint, I respectfully dissent.